### NEWCOMB and others *vs.* CRAMER and CRAMER.

In an action upon a note or contract for the payment of a specified sum, in wagons, the defense was that the wagons had been delivered by the defendants, according to the contract. It was proved that the plaintiffs immediately on seeing the wagons, wrote a letter to their attorneys, at the place where the defendants resided, declining to accept the wagons on the contract, pointing out their defects, and suggesting a course for the defendants to adopt; and directing the attorneys to communicate it to the defendants, which they accordingly did. *Held*, that such letter was admissible in evidence, as being the notice by the plaintiffs of their non-acceptance of the wagons, and of their specific objections to them.

*Held also*, that such letter being obviously intended to be shown to the defendants, and having been in fact read to them, it was not material that it was not addressed to them.

What acts amount to an acceptance of articles attempted to be delivered in fulfillment of a written contract.

Under a contract for the delivery of specific articles at a particular place, other than the residence of the promisee, it is the duty of the promiser, after making the delivery at that place, to notify the promisee thereof, without delay.

Until such delivery and notice, the promisee is not in a condition to object to the quality of the articles; nor can the title pass.

THIS was an action of assumpsit, brought to recover the amount of an instrument in writing in these words: " $95,07. One year from date, for value received, we promise to pay T. W. Newcomb & Co. ninety-five dollars and seven cents, and interest, to be paid in three one-horse wagons, to be substantially

built, worth forty dollars each, with boxes to be painted cream color, and striped with green or black, to be well made and good marketable wagons, to be delivered to or for them at Comstock's Landing, Washington Co. N. Y., which wagons, when so delivered, are to be sold by said T. W. Newcomb & Co. for the best price they can get, and if said wagons sell for more than said sum of ninety-five dollars and seven cents, and interest thereon from this date, the overplus is to be paid by them to A. F. Cramer, of Granville, N. Y.   Granville, January 27, 1845.

A. F. CRAMER.<br>PETER CRAMER."

On the trial, at the Rensselaer circuit, before Justice HARRIS, in December, 1849, the following facts were proved.   Previous to January, 1845, the plaintiffs sent for collection, to Isaac W. Thompson & Oscar F. Thompson, attorneys at law in Granville, a demand against the defendant, Andrew F. Cramer.   These attorneys sued it, and obtained judgment thereon against the said defendant.   This judgment was subsequently settled and discharged by the defendant, Andrew, giving the note in controversy, and getting his father, Peter, the other defendant, to sign it with him.   All the business in reference to the judgment and note was transacted on the part of the plaintiffs by the Thompsons.   The plaintiffs were not present at any time or at any of the negotiations.   The note was delivered to the Thompsons, and remained in their possession with the knowledge of the plaintiffs, until it was given up to Andrew F. Cramer.   Some short time before the note fell due, one of the defendants called on the Thompsons, and informed them that the wagons were ready, and requested one of them to examine them.   This was declined by Oscar F., on the ground that he was no judge of the property, and had no directions about it; and that he had no authority to accept.   On the 27th of January, 1846, the defendant, Andrew F. Cramer, delivered at Comstock's Landing, for the plaintiffs, T. W. Newcomb & Co., three one-horse lumber wagons.   It did not appear that either of the plaintiffs or any one of them was there to receive the wagons.   They were left in the storehouse of the only forwarder at that place.   Having

done this, the younger Cramer called upon the Thompsons and showed the forwarder's receipt of the delivery of the wagons, and requested the note in question, which the Thompsons then had in their possession. At first this was declined by Oscar F. Thompson, on the ground that he had no directions about it. The facts were then at the same time stated to Isaac W. Thompson, who remarked that "he had seen the wagons as he was passing along in the street." He said "they were nice looking wagons, and thought they would do." He then told his brother to get the note and give it up to the defendants, which he then did; observing that he would keep a copy of the note, so that if there was any thing wrong, or the wagons should not turn out according to contract, it could be rectified.

. The wagons remained at the Landing until the last of April, 1846. About half the time they were there, they stood in an open shed—open to the west—that being the side fronting the dock and canal. On the opening of navigation, they were forwarded to the plaintiffs, by Kellogg, and in a few days after arrived in Troy. A carman named Stannard, took them from the dock in Troy, and put them under a shanty on the plaintiffs' premises. He told them of it; and left the wagons there, where they remained until the September following, when they were moved by Stannard to Armstrong & Squires' store, at which place they were seen during the circuit.

. In April, 1846, the plaintiffs wrote to the Thompsons, stating the arrival of the wagons in Troy, complaining of them, and declining to receive them, unless the defendants made a further agreement, &c. The reading of this letter as evidence, was objected to by the defendants' counsel, but admitted by the judge. O. F. Thompson communicated the letter to the defendants—he having, as he thought, in the summer, notified the plaintiffs that the wagons had been left at the Landing by the defendants—and they declined doing any thing about it. He then demanded the note, or such wagons as it described, which demand they did not comply with.

Testimony was introduced on both sides as to the quality and value of the wagons. The plaintiffs' witnesses on this point spoke of the value at Troy, and the defendants' witnesses of the

value at Comstock's Landing and vicinity. The plaintiffs re-
covered the amount of the note with interest, being $120,76. A
motion was now made by the defendants for a new trial, upon
a case.

*D. L. Seymour*, for the plaintiffs.

*J. Finlayson*, for the defendants.

*By the Court*, WILLARD, J.   As the charge of the judge is
not set forth in the case, and was not objected to, we must pre-
sume that it fairly submitted the questions of fact.   The weight
of evidence as to the quality and value of the wagons, and as to
whether the plaintiffs had in fact accepted them, was clearly
with the plaintiffs, and warranted the verdict.

The errors mainly complained of are, 1st. The reception in
evidence of the letter of the plaintiffs to Mr. Thompson, dated
April 23, 1846.   It was objected to because it was the acts or
declarations of the plaintiffs themselves.   The wagons were not
received by the plaintiffs at their residence, in Troy, nor did
they know of their existence till the opening of canal navigation,
in April, 1846, and immediately on seeing them, they wrote the
letter in question to Mr. Thompson, their attorney, declining to
accept them on the contract, pointing out their defects, and sug-
gesting a course for the defendants to adopt, and directing Mr.
Thompson to communicate it to the defendants, which he
accordingly did.   This was undoubtedly admissible in evidence.
It was the notice by the plaintiffs of their non-acceptance of the
wagons, and of their specific objections to them.   It is not ma-
terial that it was not addressed to the defendants.   It was
obviously intended to be shown to them, and was read to them
by Mr. Thompson.

It is insisted in the next place, that the acts of the plaintiffs
amounted to an acceptance of the wagons.   If this be so, the
verdict was of course wrong.   The wagons, by the terms of the
note, were deliverable at Comstock's Landing the 27th January,
1846, to or for the plaintiffs.   They were on that day delivered

to Kellogg, at the Landing, and he gave a receipt to the defendants, saying that he had received the wagons in store for O. F. Thompson, consigned to the plaintiffs, Troy, N. Y. Kellogg had the only storehouse at Comstock's Landing, which was 11 miles from Mr. Thompson's, in Granville, and 64 from the plaintiffs', in Troy. Mr. Thompson was not authorized by the plaintiffs to receive the wagons; and there is no evidence that the latter were apprized of the delivery, until their arrival in Troy, in April following.

Under a contract like this, it was the duty of the defendants, after making the delivery at the only storehouse at Comstock's Landing, to notify the plaintiffs thereof, without delay. Until such delivery and notice to the plaintiffs, the latter were not in circumstances to object to the quality of the articles; nor could the title pass. (*See Wood* v. *Tassell*, 6 *Adol. & Ellis, N. S.* 234; *Story on Contracts,* 801.) As Thompson was not the agent of the plaintiffs, his delivering up of the original note, was a nullity. He had no power to accept the wagons. Notice to him was not notice to the plaintiffs. The defendants knew that Thompson had no right to give up the note. Their obtaining possession of it, was a fraud upon the plaintiffs.

The verdict and judgment were right; and the judgment should be affirmed.

Judgment affirmed.

---

SAME TERM.　　*Before the same Justices.*